## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MELINDA K. BAKER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. CIV-06-899-L** |
| ) | |
| **MICHAEL J. ASTRUE,**[1] ) | |
| **Commissioner, Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security Administration (Commissioner) denying her application for disability insurance benefits. United States District Judge Tim Leonard has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). The Commissioner has answered and filed the administrative record (hereinafter Tr. _____).  Both parties have briefed their respective positions, and thus the matter is at issue.  For the reasons stated herein, it is recommended that the Commissioner's decision be reversed and the matter remanded for further proceedings consistent with this Report and Recommendation.

## I.  PROCEDURAL HISTORY

Plaintiff  filed her application for disability insurance benefits on November 17, 2003, alleging a disability since August 31, 2000. Tr. 55-57. The application was denied

---

[1]As of February 1, 2007, Michael J. Astrue became the Commissioner of the Social Security Administration.  Pursuant to Fed R. Civ. P. 25(d)(1) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Michael J. Astrue is substituted for former Commissioner Jo Anne B. Barnhart as the Defendant in this suit.

on initial consideration and on reconsideration at the administrative level.  Tr. 24, 25, 26-28, 30-32.   Pursuant to Plaintiff's request, a hearing de novo was held before an administrative law judge on August 10, 2005. Tr. 33, 280-317.  Plaintiff  appeared with counsel, and offered testimony in support of her application.  Tr. 282, 284-313.  A vocational expert also testified at the request of the administrative law judge.  Tr. 43-50, 313-16.  The administrative law judge issued his decision on September 9, 2005, finding that Plaintiff was not disabled within the meaning of the Social Security Act and that she was thus not entitled to benefits. Tr. 13-15, 16-22. The Appeals Council denied Plaintiff's request for review on June 30, 2006, and the decision of the administrative law judge became the final decision of the Commissioner. Tr. 5-7.

## II.  STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review as follows:

> We review the agency's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  However, a decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it.  The agency's failure to apply correct legal standards, or show us it has done so, is also grounds for reversal. Finally, because our review is based on the record taken as a whole, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking into account whatever in the record fairly detracts from its weight.  However, we may neither reweigh the evidence nor substitute our discretion for that of the Commissioner.

Hamlin v. Barnhart,  365 F.3d 1208, 1214 (10th Cir. 2004) (internal quotations and citations omitted).  The Commissioner follows a five-step sequential evaluation process

to determine whether a claimant is disabled. <u>Williams v. Bowen</u>, 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant bears the burden of establishing a prima facie case of disability at steps one through four. <u>Id.</u> at 751, & n. 2.  If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity to perform work in the national economy, given his age, education, and work experience. <u>Id.</u> at 751.

## III.  THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

In determining that Plaintiff was not disabled, the administrative law judge apparently followed the sequential evaluation process set forth in 20 C.F.R. § 404.1520. He found that Plaintiff had not engaged in substantial gainful activity since August 31, 2000. Tr. 21.  At steps two and three, the administrative law judge found that Plaintiff suffers from chronic neck and back pain secondary residual of motor vehicle accidents and degenerative disk disease of her cervical and lumbar spinal regions, hypertension, and depression but that for no period of twelve continuous months has she suffered an impairment or combination of impairments of such severity to meet or equal the requirements of Listing 1.00 et seq., Listing 3.00 et seq., Listing 12.00 et seq., or the requirements of any other of the impairments listed in 20 C.F.R. Part 404, Appendix 1, Subpart P, Regulation No. 4.  Tr. 19, 21.  At the fourth step of the sequential evaluation process, the administrative law judge found that for no period of twelve continuous months had Plaintiff been precluded from performing semi-skilled work at the light exertional level that does not require repetitive bending or stooping or repetitive twisting or turning of her neck, and that she was not precluded from performing her past relevant

work as a hospital housekeeper or meat packer (wrapper).  Tr. 19-21. Alternatively, at step

five, the administrative law judge found that a person with Plaintiff's residual functional

capacity and vocational factors could perform work as either a personal attendant or

companion, and that these jobs exist in significant numbers in the economy. Tr. 20, 21.

The administrative law judge thus found that Plaintiff was not disabled and not entitled

to benefits.  Tr. 20, 21.

## A.  ISSUES ON APPEAL

Plaintiff raises six issues on appeal.  First, she contends that the administrative law

judge committed legal error by not specifically addressing Listing 12.04, the listing

pertaining to depression, in his decision.  Plaintiff's Opening Brief, p. 7.  Second, she

claims that the administrative law judge erred in failing to give substantial weight to the

opinion of her treating psychiatrist and in failing to find her disabled based upon the

GAF[2] scores of 35-40 assigned by her psychiatrist.  Id. at 12.  Third, she contends that the

administrative law judge did not properly evaluate her pain, and engaged in improper

"picking and choosing" from the medical record.  Plaintiff's Opening Brief, p. 13.  Fourth,

Plaintiff claims that the hypothetical submitted to the vocational expert did not include

any of her limitations or impairments.   Id. at 23.   Five, she contends that the

administrative law judge erred in finding that she had the RFC to engage in her past

relevant work.  Id. at 26.  Sixth, and finally, she claims that the administrative law judge

erred in concluding at step five that she could perform other types of work.  Id. at p. 29.

_____

[2]"GAF" is the abbreviation for "Global Assessment of Functioning" and is a scale utilized by clinicians to reflect overall level of functioning. See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., Text Revision, 2000) (DSM-IV-TR).

**1. Failure to Specifically Address Listing 12.04**

As her first claim of error, Plaintiff contends that the administrative law judge committed legal error by failing to specifically address Listing 12.04, the listing pertaining to depression, in his decision.  Plaintiff's Opening Brief, p. 7.  She claims that this specific listing was brought to the attention of the administrative law judge at the beginning of the administrative hearing.  Id.  at 8.  Plaintiff concedes that the administrative law judge made what she characterizes as a "general catchall comment" that he had considered Listing 12.00 et seq., but claims that "noting a few mental findings" and stating that he had considered this listing in summary fashion is not sufficient.  Id. at 10, 11 (citing Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996)).  Finally, Plaintiff contends that the administrative law judge failed to discuss the uncontroverted evidence he chose not to rely upon and the significantly probative evidence he rejected regarding her depression, and did not discuss any of her testimony regarding her depression.  Id. at 11.

The Commissioner responds that although the administrative law judge did not specifically identify Listing 12.04, his findings directly correlate with the "B" criteria of that listing.  Commissioner's Brief, p. 4.  Moreover, the Commissioner argues that the Tenth Circuit Court of Appeals has rejected a construction of Clifton that would lead to remands which needlessly prolong administrative proceedings.  Id. (citing Fischer-Ross v. Barnhart, 431 F.3d 729, 730 (10th Cir. 2005)).  He claims that because the administrative law judge made findings specific to the "B" criteria of Listing 12.04, his decision should be affirmed.  The undersigned agrees.

Plaintiff has overstated the holding in <u>Clifton</u>.  In that case, the administrative law judge "did not discuss the evidence or his reasons for determining that [the claimant] was not disabled at step three, or even identify the relevant Listing or Listings; he merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment."  <u>Clifton</u>, 79 F.3d at 1009.  In this case, the administrative law judge did discuss the evidence relating to Plaintiff's depression at some length:

> In June 2004, the claimant underwent an initial psychiatric evaluation to establish outpatient psychiatric treatments and counseling at a community psychiatric facility.  She reported a history of depression resulting from chronic pain and loss of siblings in 2001, 2002, and 2003.  She denied any suicidal or homicidal ideation.  She also denied any history of drugs or alcohol abuse.  Mental status examination showed her to be alert and cooperative with a depressed mood and fully affect.  Initially her thought processes were slowed, but they later improved and became pleasant and smiling. She denied any auditory or visual hallucinations.  She was fully oriented and her memory fully intact.  Her insight was full and her judgment good.   She was diagnosed as suffering major depression (recurrent), superimposed on dysthymic disorder.  She was subsequently followed through at least January 2005 with ongoing, outpatient psychiatric treatments and counseling.
>
> ...
>
> In June 2004, a social worker involved in and familiar with the claimant's psychiatric treatments and counseling reported that she suffers major depressive disorder that leaves her with good to fair mental abilities and aptitudes and imposes moderate to marked restrictions and limitations on her ability to perform mental related work activities.  The [administrative law judge] has considered the social worker's assessments by the [regulatory criteria].   Since she is not licensed as a physician or psychologist, the undersigned finds that her assessment is not entitled to consideration for controlling weight.  For the reasons set forth below, the undersigned also finds that the social worker's assessments are not well-supported by medical evidence and not consistent with other substantial evidence in the hearing record.
>
> The undersigned notes that the June 2004 initial mental status examination of the claimant by a treating psychiatrist showed her to exhibit signs of

depression and initially slowed thought processes, but did not show her to exhibit signs of thought disorders, psychosis, cognitive deficits, memory deficit, personality disorders, deteriorated social skills, communication deficits, or judgment deficits.  The October 2004, January 2005, and March 2005; report of follow-up mental status examinations of the claimant prepared by the treating psychiatrist described her mood to be normal and her affect to be appropriate and the remaining mental functions to be fully intact without any signs of marked limitations.   In comparison, the contemporaneous mental status evaluations prepared by the social worker continued to persistently describe the claimant as exhibiting depressed mood and affect.   The undersigned is convinced that the treating psychiatrist's descriptions of the claimant's mental status examinations are entitled to greater weight than those provided by the social worker.

Tr. 17-19.  (citations omitted). The administrative law judge went on to find that Plaintiff

had mild restrictions of activities of daily living, mild difficulties in maintaining social

functions, mild to mildly moderate difficulties in maintaining concentration, persistence,

and pace, and no episodes of deterioration or decompensation in work or work-like

settings.  Tr. 19.  Thus, unlike the decisionmaker in Clifton, the administrative law judge

here did mention the category of listings containing the listing for depression, discussed

the medical evidence of Plaintiff's depression, and then applied the "B" criteria for Listing

12.04.  It is therefore recommended that Plaintiff's request for reversal on this ground be

denied.

## 2.  Failure to Give the Treating Physician's Opinion Substantial Weight

In her second claim of error, Plaintiff contends that the administrative law judge

failed to give her treating physician's opinion regarding her GAF score substantial weight.

Plaintiff's Opening Brief, p. 12.  Plaintiff argues that because the administrative law judge

gave the opinion of her treating psychiatrist Dr. Surinder Randhawa greater weight than

that of her counselor, Ms. Russell, that he should have found her disabled based upon

the fact that Dr. Randhawa rated her as having a GAF score of 35-40.  Id.  She claims that the administrative law judge "totally ignored the GAF rating and never even commented on it."  Id.

The Commissioner responds that GAF scores do not necessarily relate to whether a claimant is disabled under the Social Security Act.  Commissioner's Brief, p. 5. He adds that the rating in question was at Plaintiff's initial evaluation, before she had any history of mental health treatment.  Id. at 5.

As noted above, the GAF score is a subjective determination based on a scale of 1-100 of "the clinician's judgment of the individual's overall level of functioning." DSM-IV at 32. "A GAF of 31-40 is extremely low, and 'indicates [s]ome impairment in reality testing or communication ... [or] major impairment in reality testing or communication ... [or] major impairment in reality testing or communication ... [or] major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.' Salazar v. Barnhart, 468 F.3d 615, 624 n.4 (10th Cir 2006) (quoting DSM-IV at 32).   In this case, Dr. Randhawa did not indicate that Plaintiff's depression would interfere with her ability to work.  In fact, the history portion of the initial evaluation indicates that Plaintiff told Dr. Randhawa that she had lost her job because of "a motor vehicle accident that made her slow at the job." Tr. 198.  In the absence of any evidence indicating that Dr. Randhawa  assigned this GAF score because she perceived an impairment in Plaintiff's ability to work, the score, standing alone, does not establish an impairment seriously interfering with Plaintiff's ability to perform basic work activities. Cainglit v. Barnhart, No. 03-7004, 2003 WL 22963117, at*3 (10th Cir. Dec. 17,  2003);

8

Lopez v. Barnhart, No. 03-2035, 2003 WL 22351956, at*2 (10th Cir. Oct. 16, 2003) ("Contrary to claimant's contention, a GAF score of 40 may indicate problems that do not necessarily relate to the ability to hold a job....");[3] Howard v. Comm'r of Soc. Sec. 276 F.3d 235, 241 (6th Cir.2002) (stating that administrative law judge's "failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate"). Moreover, Dr. Randhawa did not repeat the GAF score, or make any Axis V diagnosis in subsequent assessments, further weakening its significance to the issue of disability. See Tr. 202, 207, 218, 220. Accordingly, it is recommended that reversal on grounds that the administrative law judge failed to reference Plaintiff's GAF score be denied.

### 3. Credibility Analysis/ "Picking and Choosing" of Evidence

As her third claim of error, Plaintiff contends that the administrative law judge ignored certain aspects of the uncontroverted medical evidence in order to reach a finding of non-disability. She claims that the administrative law judge discussed many normal findings from her consultative examination that are irrelevant to the issues in her application, making it appear as if her "problems are not severe." Plaintiff's Opening Brief, p. 14. She claims that the administrative law judge incorrectly stated that straight leg raising was negative, whereas the consultative examiner actually noted that the test was positive bilaterally in both the sitting and standing position. Id. She also contends that the administrative law judge failed to note in the decision that she told the

---

[3]These and any other unpublished dispositions are cited for persuasive authority pursuant to Fed. R. App. P. 32.1.

consultative examiner that she wore her TENS[4] unit most everyday. Id,  She claims that the administrative law judge stated that the consultative examination showed no neurological defects, whereas the record shows pain in L1-L4 and positive straight leg raising. Id. at 15.

Plaintiff also contends that the administrative law judge relied upon negative findings from an x-ray in March 2004 that showed no significant degenerative changes or other abnormalities, whereas an MRI taken in 1998 did show degenerative changes at L5-S1with desiccation and mild changes in the cervical spine. Id. at 15 (compare Tr. 245 with 173-74).  Plaintiff argues that "[i]t is common knowledge the MRI is a much more technically advanced tool than an x-ray, and the results are more accurate.  The MRI results would seem to argue against the less technically advanced x-rays regarding [Plaintiff's] degenerative conditions in her neck and low back." Plaintiff's Opening Brief, p. 15-16.  She also claims that the statement by the administrative law judge that she has had a good response to medication and therapy is not true because if she "had received the benefit of a good response to medication and therapy then she would not be taking medication subsequent to 1999." Id. at 16. Plaintiff also claims that the administrative law judge ignored Plaintiff's frequent trips to the doctor, her medication, her limited daily activities, and her depression.  Id. at 19.  Finally, Plaintiff takes issue with the administrative law judge's conclusion that Plaintiff possesses average intellectual functioning. Id. at 22.

---

[4]Transcutaneous electrical nerve stimulation (TENS) involves the passage of low-voltage electrical current to electrodes pasted on the skin.  Aetna InteliHealth, Complementary & Alternative Medicine (Created by Natural Standard and the Faculty of the Harvard Medical School) (accessed Oct. 2, 2007).

The Commissioner responds that credibility determinations are peculiarly the province of the finder of fact, and should not be upset on appellate review when they are supported by substantial evidence – even if the Plaintiff has a different interpretation of the evidence. Commissioner's Brief, p. 6. He further claims that it is not the existence of pain which is the issue, but whether the results of the pain are such as to preclude work activity. Id. Although the Commissioner concedes that the administrative law judge must explain why the evidence related to each credibility factor leads him to his conclusion, a formalistic recitation is not required. Id. at 6-7. The Commissioner argues that the administrative law judge considered such factors as the absence of stenosis or neuroforaminal compromise even though Plaintiff complained of severe cervical and lumbar spine symptoms; the conservative treatment Plaintiff received for the injuries that precipitated her alleged disability; normal mood, appropriate affect, intact mental functions, and no signs of marked limitations with regard to Plaintiff's mental impairments, as well as the lack of any opinion from an acceptable medical source that Plaintiff has totally disabling functions; the inconsistency between Plaintiff's claim of intellectual deficits  with the psychiatric treatment notes, her performance of past relevant work at the semi-skilled level, and her inconsistent statements in the hearing and on her benefits application as to whether she attended special education classes. Id. at 7-8.

"When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be

11

evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities." Social Security Ruling 96-7p, 1996 WL 374186, at *1.  Such credibility determinations are peculiarly the province of the finder of fact, and they will not be upset on appellate review when they are supported by substantial evidence. Diaz v. Secretary of Health and Human Services, 898 F.2d 774, 777 (10th Cir. 1990); Kepler v. Chater, 68 F.3d 387, 391 (10th Cir.1995) (same).  Some of the factors that may be considered in assessing a claimant's credibility include (1) daily activities; (2) the location, duration, frequency, and intensity of pain; (3) factors that precipitate and aggravate the pain; (4) the type, dosage, effectiveness, and side effects of any medication the claimant receives or has received for relief of pain; (5) treatment, other than medication, the claimant has received for relief of pain; and (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms.  Social Security Ruling 96-7p, 1996 WL 374186 at *3; 20 C.F.R. §§ 404.1529(c)(3); Luna v. Bowen, 834 F.2d 161, 164-66 (10th Cir. 1987). In assessing a claimant's credibility, an administrative law judge must state the evidence upon which he relies.  Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  However, he is not required to undertake a factor-by-factor analysis and discuss every piece of evidence in the record. Id. By the same token, an administrative law judge is not entitled to "pick and choose" from  medical opinions, using only those parts that are favorable to a finding of nondisability.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

In reviewing the decision and the record in light of these standards, the undersigned finds that the administrative law judge committed no error in analyzing

Plaintiff's credibility and did not "pick and choose" only the evidence favorable to his finding that she was not disabled.   First, although Plaintiff is correct that the administrative law judge misstated the medical record with regard to the results of the straight leg raising test, the medical consultant did correctly note the results of the test and yet made the same findings with regard to Plaintiff's exertional limitations. Compare Tr. 112 (finding occasional lifting of 20 pounds, frequent lifting of 10 pounds, standing/walking/sitting 6 hours in an 8-hours workday and unlimited push/pull) with Tr. 19 (finding Plaintiff not to be precluded from work at the light extertional level). According to the applicable regulations, "light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567.  Thus, either the statement regarding the results of the straight leg raising test was a scrivener's error, or was harmless. Moreover, the administrative law judge imposed additional postural limitations over and above those recommended by the medical consultant – who did correctly note the results of the test – making it more probable than not that the statement in the decision regarding the test results was simply a mistake.  Compare Tr. 19 with 113. See  Herwig v. Massanari, No. 00-5219,  2001 WL 1203053at *2 (10th Cir.2001) ("The misstatement in the written decision ... does not render the ... ultimate decision unsupported by substantial evidence.").  Plaintiff's claim that the administrative law judge ignored the "more accurate" MRI performed in 1998 (which she adds is by "common knowledge ... a much more technically advanced tool") is simply incorrect.  In

13

fact, the MRI is the very first diagnostic study referenced in the decision: "Diagnostic studies revealed [desiccation] at L5-S1 with loss of disc space and mild [desiccation] of the cervical spinal region, but no signs of fractures, disc herniation, or spinal compression." Tr. 16 (referring to MRI of Sept. 25, 1998, appearing at Tr. 173-74). The administrative law judge also refers to the 2004 x-ray later in his decision, after referencing the final impressions of Richard S. Piazza, D.O. regarding the condition for which the MRI had been performed, and there is nothing about either diagnostic study which is inconsistent with the administrative law judge's finding that Plaintiff had no neurological or sensory deficits or a spinal disorder resulting in totally disabling pain.

Plaintiff next complains that the administrative law judge did not mention her use of a TENS unit, claiming that he chose to ignore that portion of the consultative medical examination in which she told the examining physician as part of her history that she wears her TENS unit almost every day. Plaintiff's Opening Brief, p. 16 (citing Tr. 147). Plaintiff further contends that because she has continued to require medication therapy, the administrative law judge's conclusion that she does not suffer totally disabling pain is not supported by substantial evidence. Plaintiff's Opening Brief, p. 17.

In her hearing testimony, Plaintiff stated the following when asked about the TENS unit: "I wear it when I don't take my medication." Tr. 288. Plaintiff has failed to identify where in the record a TENS unit was prescribed, who prescribed it, when, or for what condition or symptom it was prescribed. Although the administrative law judge may not have specifically mentioned the TENS unit in his decision, he did discuss Plaintiff's reports of chronic pain to the consultative examiner, the consultative examiner's

14

elicitation of pain responses during the examination of Plaintiff's neck, back, and hips, as well as his diagnoses of chronic lower back pain, lumbar facet joint syndrome, and chronic neck pain.  Tr. 17.  The administrative law judge also noted that Plaintiff has experienced chronic pain and has been on resultant medication therapy since 1999.  Tr. 18.  The administrative law judge identified those parts of the medical record containing information regarding the type of medication prescribed, the dates, and the purpose for which it was prescribed.  See Tr. 18 (citing Exs. 4F, 5F, and 10F to the administrative record).  Thus, although the administrative law judge did not mention Plaintiff's testimony regarding the TENS unit, he did discuss her complaints and diagnoses of chronic pain in detail.  In conjunction with this discussion, he also mentioned her long-term medication therapy.  Plaintiff's contention that this proves her claim of disabling pain is inconsistent with Social Security Ruling 96-7p,  20 C.F.R. §§ 404.1529(c)(3), and Luna, which specifically includes the effectiveness of the medications as one of the factors to be considered in evaluating symptoms, including pain.  The administrative law judge referred to the exhibits containing information requiring dosages and other information (which he stated he had considered), and the fact that she takes medication. In the absence of evidence that the medication, though effective, has disabling side effects, such does not in and of itself render her disabled.

Next Plaintiff complains that the administrative law judge failed to consider her frequent visits to the doctor and her daily activities in his credibility analysis.  Plaintiff's Opening Brief, p. 19-20.  However, as noted above, the administrative law judge is not required to undertake a factor- by-factor analysis and discuss every piece of evidence in

the record.  "Though the written decision could have discussed more of the factors in

greater detail, the simple failure to do so is not error in itself" <u>Bridgeford v. Chater</u>,  922

F.Supp. 449, 459 (D. Kan.1995).  Specifically, the failure to discuss daily activities has

been found not to constitute error under <u>Luna</u>:

> plaintiff argues that the [administrative law judge] failed to consider her
> daily activities, duration, frequency and intensity of pain, the dosage,
> effectiveness and side effects of medication, precipitating and aggravating
> factors, and functional restrictions. In his findings, the [administrative law
> judge] found plaintiff's testimony to be partially credible when considered
> in light of the medical signs and findings, her history of medical treatment,
> the reports of treating and examining physicians, and the inconsistencies
> within her testimony. While the [administrative law judge's] discussion of
> these factors within the body of his opinion could have been more detailed,
> the court cannot find that the [administrative law judge] erred. The failure
> to recite the list of every factor identified in <u>Luna</u> is not error.

<u>Porter v. Chater</u>, 895 F.Supp. 1427, 1436 (D. Kan. 1995).  Likewise, in this case, the

administrative law judge specifically discussed many of the <u>Luna</u> factors, and although

he did not reference her daily activities, he did cite to the medical record reflecting her

medical visits and as noted above, acknowledged her diagnosis and treatment for chronic

back and neck pain.  Accordingly, it is recommended that Plaintiff's third claim of error

be rejected.

Finally, Plaintiff complains that the administrative law judge improperly found

that she possesses at least average intellectual functioning.  Plaintiff's Opening Brief, p.

22.  She claims that the finding was based upon speculation and not upon substantial

evidence because she was never evaluated by a psychiatrist or given an IQ test.  <u>Id.</u>  The

Commissioner responds that Plaintiff's claim of intellectual deficits was found not

credible in light of her psychiatric treatment notes which do not describe any signs of

16

lower intellectual functioning, with the vocational expert's description of her past work as an adult daycare worker as semi-skilled, and with her own Disability Report in which she stated that she had not attended any special education classes. Commissioner's Brief, p. 7-8 (citing Tr. 19).

The undersigned finds that the administrative law judge did not engage in improper speculation in reaching his conclusion regarding Plaintiff's intellectual functioning. He stated his reasons for his finding in the decision, and they are supported by substantial evidence. Although Plaintiff did see mental health professionals, none commented on any limitations in her intellectual capacity, and there was an inconsistency in Plaintiff's own statements regarding whether she attended special education classes in high school. Compare Tr. 81 with 284. Moreover, the administrative law judge noted that her  past relevant work, which the vocational expert categorized as semi-skilled, was an indicator of at least average intellectual function. Tr. 19. See Todd v. Apfel, 8 F.Supp.2d 747, 753 (W.D. Tenn. 1998) (administrative law judge properly concluded that claimant's intellectual ability did not limit her to unskilled work since some of her past work had been at a semi-skilled level and there had been no evidence of a decline in intellect since then). In light of the foregoing, it is recommended that Plaintiff's third claim of error be rejected.

### 4.  Whether Plaintiff Has the RFC to Perform Her PRW

Plaintiff contends that the administrative law judge erred in concluding that she could perform her past relevant work as housekeeper at a hospital and a meat packer (wrapper). Plaintiff's Opening Brief, p. 26. She claims that the administrative law judge's

conclusion that she could perform these medium exertional level jobs because Plaintiff had performed them at the light exertional level was erroneous.  Id. at 27.  First, she contends that she swept and mopped floors, emptied trash cans, and cleaned up restrooms, constituting significant stooping and bending, and that she frequently lifted 25 pounds – which exceeds the definition of light work.  Id.  Second, she contends that her testimony regarding the amount of weight lifted in the meat packer job varied, and that the Dictionary of Occupational Titles lists the job as medium.  Id. at 27-28.  Third, she claims that the administrative law judge made no inquiry into the mental demands of Plaintiff's past relevant work, making him unable to make the necessary findings at step three regarding her ability to meet the mental demands of her past relevant work despite her mental impairments. Id. at 29.

The Commissioner responds that the record contains adequate evidence of the demands of Plaintiff's past relevant work, and that although Plaintiff now contends that her past work required a lot of bending and stooping, and lifting of more than 20 pounds, Plaintiff stated on November 21, 2003, that her work as a meat packer (wrapper) did not require her to bend/stoop, or to lift more than ten pounds.  Commissioner's Brief, p. 11 (citing Tr. 67).  The Commissioner thus concludes that Plaintiff's Work History Report constitutes substantial evidence supporting the administrative law judge's finding that her past work did not require the performance of tasks precluded by her RFC.  Id.  The Commissioner also contends that the administrative law judge must only obtain factual information regarding work demands that have a bearing upon medically established limitations.  Id. at 10.

In this case, the undersigned is somewhat persuaded that the administrative law judge's finding that Plaintiff's past work as she performed it did not require the performance of physical tasks precluded by her RFC is supported by substantial evidence in the form of her Work History Report.   <u>Medina v. Barnhart</u>   No. Civ.A. SA04CA1057FBN, 2005 WL 2708789, at *10  (W.D.Tex. Oct. 19, 2005) ("plaintiff's work activity and work history reports submitted in support of her applications ...fully corroborate ... determination that plaintiff's assessed RFC allowed her to return to her past relevant work").  However, it was also necessary for the administrative law judge to inquire into the mental demands of her past relevant work in light of his findings that she suffers mild restrictions in daily living, mild difficulties in maintaining social functions, and mild to mildly moderate difficulties in maintaining concentration, persistence, and pace.  Tr. 19.  This was not done, and there is no other evidence in the record to establish the mental demands of Plaintiff's past work.

There are three phases of evaluation an administrative law judge must complete at step four of the sequential evaluation:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work.  In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one.  At each of these phases, the ALJ must make specific findings.

<u>Doyal v. Barnhart</u>, 331 F.3d 758, 760 (10th Cir. 2003) (quoting <u>Winfrey v. Chater</u>, 92 F.3d 1017 (10th Cir. 1996) (citations omitted)).  The administrative law judge's evaluation of a claimant's RFC must include specific findings and an explanation of how the

administrative law judge analyzed the evidence and resolved inconsistencies or ambiguities.  See Social Security Ruling 96-8p, 1996 WL 374184 (July 2, 1996), After evaluating a claimant's RFC, an administrative law judge must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations."  Social Security Ruling 82-62, 1982 WL 31386,  at *3 (1982).  The administrative law judge  must then make specific and detailed findings concerning the physical and mental demands of the past jobs. See id., 1982 WL 31386 at *4; see also Doyal, 331 F.3d at 760.

The administrative law judge made no findings regarding the mental demands of Plaintiff's past jobs and, therefore, there is no evidence to support the administrative law judge's finding that Plaintiff could return to her past relevant work.  This error requires reversal.  On remand, the Commissioner should carefully consider Plaintiff's mental limitations compared to the demands of her past relevant work before making a step four determination that Plaintiff is not disabled.  Because the case must be remanded in any event due to the lack of evidence with regard to the mental demands of Plaintiff's past relevant work, the Commissioner should also obtain factual information regarding the physical demands of Plaintiff's past jobs, rather than having to rely solely upon the Work History Report.

### 5.  Hypothetical Posed to the Vocational Expert/RFC to Perform Other Work

Finally, Plaintiff contends that the hypothetical posed by the administrative law judge to the vocational expert was defective because it did not relate any of her limitations or impairments, and that the administrative law judge erred in finding that

she has the RFC to perform other work even if she cannot return to her past relevant work.   Plaintiff's Opening Brief, p. 23, 25. The Commissioner does not provide a substantive response, arguing that because the administrative law judge's determination at step four was proper, further review is unnecessary and any error at step five was harmless.   Commissioner's Brief, p. 11.

Even without the benefit of the Commissioner's response, the record clearly shows that the administrative law judge's finding at step five is not supported by substantial evidence in that his questioning of the vocational expert was flawed.  An administrative law judge's hypothetical question to a vocational expert  "must include all (and only) those impairments borne out by the evidentiary record." Evans v. Chater, 55 F.3d 530, 532 (10th Cir.1995).   Hypothetical questions should be crafted carefully to reflect a claimant's residual functional capacity, because  "[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir.1991).

As noted above, the administrative law judge here found Plaintiff to have mild restrictions in daily living, mild difficulties in maintaining social functions, and mild to mildly moderate difficulties in maintaining concentration, persistence, and pace.  Tr. 19. However, no limitations related to any mental restrictions or difficulties were included in the question to the vocational expert.  Tr. 314.  The United States Court of Appeals for the Tenth Circuit recently considered this issue in Wiederholt v. Barnhart, No. 03-3251, 2005 WL 290082 (10th Cir. Feb 08, 2005).  In Wiederholt, the administrative law judge

assessed the claimant's mental residual functional capacity as being "limited to simple, unskilled job tasks." <u>Id.</u> at p. 4.  The administrative law judge further found that she had "mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace." <u>Id.</u>  The hypothetical question to the vocational expert posed by the administrative law judge included only the limitation of "simple, unskilled" tasks mentally.   The vocational expert responded that, with that residual functional capacity, Mrs. Wiederholt could do unskilled light or sedentary work.  <u>Id.</u>  The administrative law judge adopted this as his finding.  <u>Id.</u>

The Tenth Circuit concluded that the administrative law judge's hypothetical question was insufficient because it did not reflect all of Mrs. Wiederholt's limitations with accuracy.  "The relatively broad, unspecified nature of the description 'simple' and 'unskilled' does not adequately incorporate the [administrative law judge's] additional, more specific findings regarding Mrs. Wiederholt's mental impairments. Because the [administrative law judge] omitted, without explanation, impairments that he found to exist, such as moderate difficulties maintaining concentration, persistence, or pace, the resulting hypothetical question was flawed." <u>Id.</u> at p. 5.  Here, the administrative law judge's question was not even as specific as that in <u>Wiederholt</u>, omitting any mention of mental limitations.  Although the administrative law judge found that Plaintiff has mild to mildly moderate difficulties in maintaining concentration, persistence or pace, this limitation was not reflected in either the RFC or the question posed to the vocational expert.  Accordingly, the record is silent as to what effect such a limitation would have

on Plaintiff's ability to perform the jobs identified by the vocational expert. The undersigned therefore also recommends that this matter be remanded to permit the Commissioner to obtain vocational testimony that considers all of the administrative law judge's findings regarding Plaintiff's limitations.

## <u>RECOMMENDATION</u>

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the final decision of the Commissioner of Social Security Administration be reversed and the matter be remanded for further proceedings consistent with this Report and Recommendation.  The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by November 19, 2007, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 30th day of October, 2007.**


DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE